UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERARD EICHBAUER,

           Plaintiff,                   Case No. 2:16-cv-11404

v.                                 Hon. Gershwin Drain

HENRY FORD HEALTH SYSTEM       Magistrate Judge R. Steven Whalen
and HENRY FORD HOSPITAL,

           Defendants.

---

| NACHTLAW, P.C. | VARNUM LLP |
|---|---|
| David A. Nacht (P47034) | Terrence J. Miglio (P30541) |
| Joseph X. Michaels (P79084) | Barbara E. Buchanan (P55084) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 101 N. Main St., Suite 555 | 160 W. Fort Street, Fifth Floor |
| Ann Arbor, MI 48104 | Detroit, MI 48226 |
| (734) 663-7550 | (313) 481-7300 |
| dnacht@nachtlaw.com | tjmiglio@varnumlaw.com |
| jmichaels@nachtlaw.com | bebuchanan@varnumlaw.com |

---

## <u>DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER (ECF Dkt. #34) GRANTING IN PART, PLAINTIFF'S MOTION TO COMPEL</u>

NOW COMES Defendants Henry Ford Health System, and Henry Ford Hospital ("Defendants"), pursuant to Fed. R. Civ. P. 72(a) and Local Rule 72.1(d), and respectfully object to the Magistrate Judge's Order (ECF Dkt. #34) entered on May 5, 2017, granting in part, Plaintiff's Motion to Compel. As demonstrated below, the Magistrate Judge's Order, which allows Plaintiff to conduct extensive

discovery regarding confidential information about individuals who are not similarly situated to Plaintiff, is overly broad, unduly burdensome, not proportional to the needs of the case and is contrary to the law. The Magistrate Judge's factual findings supporting its Order are therefore clearly erroneous and should be set aside.

## PROCEDURAL BACKGROUND

Plaintiff Gerard Eichbauer was a Certified Registered Nurse Anesthetist (CRNA). His job duties included administering anesthetic agents, including narcotics, to patients who were undergoing surgery. He was responsible for administering anesthesia, and documenting the administration and wasting of such drugs. He was terminated after: (1) displaying disturbing and unprofessional behavior in a patient care setting; (2) testing positive for narcotics; (3) an audit revealed that he diverted narcotics; and (4) failing to follow appropriate drug wasting procedures. The State of Michigan subsequently filed a complaint against Plaintiff's license, found he engaged in conduct prohibited by the Public Health Code, and he was disciplined. Despite these events, Plaintiff filed this employment discrimination case, alleging that he was discharged because of his age, sex, disability and because he took an FMLA leave. (ECF Dkt. #4)

On July 13, 2016, Plaintiff served his First Set of Interrogatories and Document Requests on Defendants. (ECF Dkt. #22, Plaintiff's Motion to Compel,

Exhibit A)   In response to Plaintiff's First Set of Interrogatories and Document Requests on Defendants (ECF Dkt. #22, Exhibit B, Interrogatory 7) seeking information regarding CRNAs employed by Defendants, Defendants produced the names of nearly 100 similarly situated individuals – CRNAs who reported to the same supervisor, who performed the same duties as Plaintiff and who worked in the same five locations as Plaintiff.  Also at the request of Plaintiff, Defendants produced the names of the CRNAs who reported to the same supervisor and who had been terminated in the past five years; the list included two female CRNAs who also were suspected of diverting narcotics (like Plaintiff) but who resigned in lieu of termination, but whose terminations were reported to LARA (like Plaintiff). (ECF Dkt. #22, Exhibit B, Interrogatory 8)

Plaintiff's Interrogatory Nos. 12-14 sought the following information:

12.    State the full name, age, sex, and disability status of all medical professionals employed by Defendants whose work performance and/or drug administration has been investigated by the Defendants in the last five years, and the outcome of any investigation, including any employment action taken as a result.

13.    State the full name, age, sex, and disability status of all medical professionals employed by Defendants in the last five years who have tested positive for drugs and/or alcohol and the state any employment action taken as a result.

14.    State the full name, date of birth, sex, and disability status of all medical professionals employed by Defendants in the last five years who have been referred to Defendants employee assistance program, or similar drug and alcohol counseling.

3

(ECF Dkt. #22, Exhibit A)

For their response to Interrogatory Nos. 12, 13 and 14, Defendants responded: "See General Objections. Defendants further object to this discovery request on the basis that it is overly broad, ambiguous and seeks information that is confidential and neither relevant nor calculated to lead to the discovery of relevant admissible information. (ECF Dkt. #22, Exhibit B)

During his deposition on December 20, 2016**, Plaintiff admitted that his age had nothing to do with his termination.** (Ex. 1, Plaintiff's dep., p. 170) Further, while Plaintiff claims that if he were female he would not have been terminated, he produced no evidence during discovery – and in fact has no evidence – to support this claim. (*Id*. at p. 169) During his deposition, Plaintiff was unable to identify any similarly situated younger male or female employees who were treated better than him. (*Id*. at p. 168) In fact, and contrary to any allegation by Plaintiff, Defendants followed the same steps as it did for Plaintiff with respect to two female CRNAs who had charting discrepancies and were suspected of diverting narcotics (Ex. 2, Johnson dep., p. 58; Ex. 3, Bendure dep., p. 77)

Plaintiff filed his Motion to Compel Discovery on February 17, 2017. (ECF Dkt. #23) In it, Plaintiff sought to compel Defendants to respond to Interrogatory

Nos. 6-8 and 12-14, as well as Document Request No. 1.  In their Response to

Plaintiff's Motion to Compel, Defendants argued that:

- Defendants are a health care system and a hospital; therefore, a vast majority of the 24,000 individuals that they employ could be considered "medical professionals," all of whom have absolutely nothing to do with Plaintiff or this litigation.  The individuals work in different departments, have different job duties, and different supervisors.  (ECF Dkt. #26)

- Plaintiff's requests regarding "medical professionals who are employed by Defendants in the last five years" were overly broad as to time, geography or position.  (ECF Dkt. #26)

- Information regarding all other "medical professionals" working for Defendants for the past five years was simply not germane to the issues at hand: did Defendants interfere with Plaintiff's FMLA leave and then retaliate against him for taking same, and was he treated differently than other CRNAs on the basis of his age, alleged disability and sex.  When appropriately framed, it was clear that what happened in other departments, in other hospitals or work locations, and to other employees by other decision-makers, was irrelevant, unduly burdensome and not proportional to the needs of the case. (ECF Dkt. #26)

- Plaintiff sought personal and/or confidential information regarding "medical professionals" who have nothing to do with the instant litigation, including information regarding their "disability status." Plaintiff failed to show how these individuals' confidential and highly personal records are relevant to the claims at issue.  (ECF Dkt. #26)

- Defendants do not keep track of an employee's "disability" so they would not be able to provide such information.  (ECF Dkt. #26)

- Plaintiff sought records dating back to 2011 – six years ago.  The acts of which Plaintiff complained allegedly occurred in September – December 2014.   Plaintiff would not need records that predate

September 2014, and claims from 2011 would be time-barred.  (ECF Dkt. #26)

- To produce the information sought by Plaintiff would require a physical review of numerous files, which would be unduly burdensome.  (ECF Dkt. #26)

A hearing on Plaintiff's Motion was held on April 11, 2017 before Magistrate Judge Whalen.[1]  Following the hearing, on May 5, 2017, Magistrate Judge Whalen issued his Order, granting in part Plaintiff's Motion.  (ECF Dkt. #34) Magistrate Judge Whalen ordered Defendants, "for the reasons and under the terms stated on the record" to provide responses to Interrogatories Nos. 12, 13 and 14 with the following limitations:

(1)   "Medical personnel" means providers of medical services who have direct patient contact[2] at Henry Ford Hospital's main campus and the four ambulatory centers where Plaintiff worked, who were so employed from January, 2013 to the present, and who are above the pay grade of Nurse but below the pay grade of physician.

---

[1] During the hearing, Plaintiff's counsel agreed that the issue with regard to Interrogatory Nos. 6-8 had been resolved, and the only Interrogatories at issue were Nos. 12-14 and documents relative to those Interrogatories in Document Request No. 1.

[2] At the hearing, Plaintiff's counsel argued that Defendants should produce information regarding "medical professionals" who had "direct patient *care*."  In his Order however, Judge Whalen required the production of information regarding medical personnel who have "direct patient *contact*," which would encompass hundreds more individuals than what Plaintiff referred to at the hearing. (ECF Dkt. #36, p. 6)  There are significant differences between employees who provide "direct patient care" and  employees who merely have "direct patient contact." Neither term is limited to employees in Plaintiff's position, a CRNA who is administering narcotics to patients undergoing surgery.

6

(2)   Names, Social Security Numbers, and other personal identifying information shall be redacted.

(*Id.*)

Discovery closed on March 15, 2017.  (ECF Dkt. #22)  Defendants filed their Motion for Summary Judgment on April 21, 2017.  (ECF Dkt. #32)  Plaintiff's Response is due May 19, 2017.  Mediation is scheduled for May 23, 2017.

Defendants now object to the Magistrate's Order in its entirety, because it is clearly erroneous and contrary to law, as it allows Plaintiff to conduct extensive discovery regarding hundreds of individuals who are not similarly situated, as a matter of law, to Plaintiff, and further, the discovery requests are overly broad, unduly burdensome and not proportional to the needs of the case.

### STANDARD OF REVIEW AND LEGAL ARGUMENT

Where, as here, the Court refers a non-dispositive motion to a Magistrate Judge, the district judge must "modify or set aside" the Magistrate Judge's order if it is "clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. §636(b)(1)(A).  A ruling is clearly erroneous if, upon review of the record, the district court is left with a definite and firm conviction that a mistake has been made.  *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)*; United States v. Hurst,* 228 F.3d 751, 756 (6th Cir. 2000).  "The clearly erroneous standard applies only to the magistrate judge's factual findings; his legal conclusions are

7

reviewed under the plenary 'contrary to law' standard … Therefore, [the reviewing court] must exercise independent judgment with respect to the magistrate judge's conclusions of law." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ford Motor Co. v. United States*, No. 08–12960, 2009 WL 2922875, at *1 (E.D. Mich. Sept. 9, 2009).[3]

## DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S ORDER

The scope of discovery is not limitless. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("'[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries.'") That is particularly true where, as here, Plaintiff's requests – even as limited by Judge Whalen – are so far afield of Plaintiff's circumstances while employed by Defendants as to run afoul of the pronouncements of the courts relative to relevancy. Here, Judge Whalen's construction of the "similarly situated" standard is clearly erroneous and contrary to law, and even with the limitations in his Order, Plaintiff's discovery requests are still overly broad, unduly burdensome and not proportional to the needs of the case.

---

[3] Unpublished cases are attached as Exhibit 4.

8

**A.     Judge Whalen's Order Regarding "Providers of Medical Services Who Have Direct Patient Contact" Encompasses Hundreds of Employees Who Are Not Similarly Situated To Plaintiff And Is Therefore Contrary To Law**

In his Order, Judge Whalen ordered Defendants to produce information responsive to Plaintiff's three remaining Interrogatories, including "providers of medical services who have direct patient contact at Henry Ford Hospital's main campus and the four ambulatory centers where Plaintiff worked, who were so employed from January, 2013 to the present, and who are above the pay grade of nurse but below the pay grade of physician."  (ECF Dkt. #34)  However, these individuals are not similarly situated to Plaintiff, who was a CRNA.   Judge Whalen's ruling in this regard is clearly contrary to law.

The Sixth Circuit has defined the "similarly situated" element as follows:

> To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*See Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) (internal quotations and citations omitted).  This requires "that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original).  The *Ercegovich* court noted that to be considered

"similarly situated" in a case where disparate discipline is alleged, the relevant factors for consideration generally include whether the individuals in question dealt with the *same supervisor, were subject to the same standards, and engaged in the same conduct*. *Id*. at 352. The plaintiff and the employees with whom the plaintiff seeks to compare himself or herself must be similar in "all of the relevant aspects." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). Defendants produced extensive data that was responsive to Plaintiff's discovery requests, and which provided him with similarly situated comparators. This included nearly 100 individuals in the same position (CRNA), with the same job responsibilities, reporting to the same supervisor, under the purview of the same Human Resources professional, in the same locations. Two of those nearly 100 individuals – both female – were subject to discipline for one of the same infractions as Plaintiff.[4] Plaintiff has information concerning similarly situated employees to determine whether or not he was treated less favorably. Plaintiff's counsel in fact ***admitted*** at the hearing on the motion to compel that he had received from Defendants information regarding comparable employees who engaged in similar conduct as he did, i.e., in Plaintiff's CRNA practice area:

---

[4] Plaintiff was not only considered to be diverting narcotics but had also failed to properly document and waste narcotics, had engaged in bizarre behavior at work and tested positive for narcotics while on the job.

10

MR. MICHAELS: . . . They have given us information relative only to his CRNA practice area, so they have already identified individuals who have had issues like this in the past.  And we do have a protective order.

THE COURT: And do you have comparators within that, that narrower –

MR. MICHAELS: ***There is -- I mean, we have comparators***.  There are people who have had similar conduct, but nobody has not been terminated.

 (ECF Dkt. #36, p. 9, emphasis added)

Two comparable employees engaged in the same conduct and resigned in lieu of termination.  The fact that Plaintiff has not found similarly situated employees who were treated differently than him does not mean that Plaintiff gets to expand the net on his fishing expedition.  "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to go fishing."  *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 304-305 (6th Cir. 2007); *see also Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S.Ct. 2710, 2719, 174 L.Ed.2d 464 (2009) ("Judges are trusted to prevent fishing expeditions or an undirected rummaging through bank books and records for evidence of some unknown wrongdoing").

The facts and holding in *Woods v. Washtenaw Hills Manor, Inc.*, No.  07-CV-15420, 2008 WL 2782917, at *1 (E.D. Mich. 2008) are instructive here.  In *Woods*, an employment discrimination lawsuit, Plaintiff was a certified nursing aid

("CNA") for a nursing home.  Plaintiff alleged that she was discriminated against because she was African-American, and terminated in retaliation for her complaints of discrimination and of patient abuse and neglect.  (*Id*.)  Woods filed a motion to compel discovery, seeking the disciplinary and in-service records of CNAs and nurses on her unit for a period from January 1, 2005 – April 30, 2007. The Magistrate Judge, following the hearing on the motion to compel, ordered the defendant to produce the information as to the CNAs but not to the nurses, because the two groups of employees were not similarly situated.  (*Id*.)  The Magistrate Judge made the distinction between the CNAs and nurses based on their distinct job duties.  (*Id*.)  Relying on *Ercegovich*, the Magistrate found that the two groups were not similarly situated because they have different job duties and different immediate supervisors.  (*Id*. at *3)  Because of this, different standards controlled their conduct.  (*Id*.)

Judge Steeh affirmed the Magistrate's decision, agreeing that the two subsets of employees were distinct and that the Plaintiff could not rely on the defendant's treatment of nurses to establish her own claim of disparate treatment.  (*Id*. at *3) Importantly, he held that "[a]lthough CNAs and nurses share some of the same duties and both must follow the same employee handbook, it was not 'clearly erroneous or contrary to law' for Magistrate Judge Morgan to rule that the two

subsets of employees are distinct and thus, Woods cannot rely on her employer's treatment of nurses to establish her own claim of disparate treatment." (*Id.*)

The same is true here. <u>As a matter of law</u>, "providers of medical services who have direct patient contact at Henry Ford Hospital's main campus and the four ambulatory centers where Plaintiff worked, who were so employed from January, 2013 to the present, and who are above the pay grade of nurse but below the pay grade of physician" are not similarly situated to Plaintiff. These individuals do ***not*** have the same job duties, do ***not*** report to the same supervisor, do ***not*** work in the same locations, do ***not*** have the same supervisory responsibilities, and therefore are ***not*** similarly situated to Plaintiff. *See Woods, supra; see also Conti v. Universal Enters.*, 50 Fed. Appx. 690, 700 (6th Cir. 2002) (upholding District Court's denial of the plaintiff's overbroad request for "the name, address, telephone number, date of hire, job title and salary information for all individuals both male and female who earned more money, either salaried or hourly, than Plaintiff for the past five years" where plaintiff could not show individuals were comparable to her); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906-07 (6th Cir. 1991) (district court properly limited discovery to same department in which plaintiff worked, rather than the "master payroll record" requested by the plaintiff which would have included approximately 1,000 partners and employees in 51 offices located in 13 states); *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 621 (S.D. Ind. 2002)

13

(limiting discovery to employees who were supervised by the same supervisor as plaintiff).  Plaintiff's Motion to Compel should have been denied in its entirety, and the Magistrate Judge's Order should now be set aside.

Finally, even though Nancy Farquharson testified during her deposition that the Defendants' Drug-Free Workplace Policy was a system-wide policy, that does not mean that, for example, a respiratory therapist (who may provide direct patient care and whose pay grade is above a nurse but below a doctor) who reports to a different supervisor in a different hospital with different job duties is similarly situated to Plaintiff, simply because that individual also works for the "system."  In this regard, Judge Whalen's Order is contrary to law and clearly erroneous since individuals would not be similarly situated merely because they work for Henry Ford Health System.  For the reasons set forth above, Judge Whalen's Order should be set aside.

**B.    According to Judge Whalen's Ruling, Plaintiff's Discovery Requests Are Still Overly Broad, Unduly Burdensome And Not Proportional To The Needs Of The Case, And His Order Is Vague As To The Definition Of "Medical Personnel"**

Judge Whalen acknowledged during the hearing that his Order could encompass thousands of individuals.  (ECF Dkt. #36, p. 18)  Further, the definition of "medical personnel" as "providers of medical services who have direct patient

14

contact" is vague, and was not further defined during the hearing.[5]  Despite Judge Whalen's ruling, Plaintiff's discovery requests are still overly broad, unduly burdensome and not proportional to the needs of the case for a number of reasons.

First, Plaintiff was terminated in December 2014.  The events leading up to his termination occurred in September – December 2014.  There is simply no legal basis to compel Defendants to review files and information of hundreds of employees and former employees who are not similarly situated to Plaintiff, and to produce information going back to 2013, more than a year before the events at issue in Plaintiff's Complaint took place.  Similarly, there is no legal reason to compel Defendants to produce information regarding individuals who have been disciplined and/or terminated <u>after</u> Plaintiff was terminated in December 2014, which would encompass more than two and-a-half years of irrelevant data. Incidents that occurred after Plaintiff's termination have no bearing on his lawsuit, and as such, the Order is overly broad.

Second, Plaintiff's requests need to be viewed not only in the light of their overbreadth, but also in the context of Plaintiff's deposition testimony regarding which employees are similarly situated to him.  Although Plaintiff argued at the

---

[5] Further, when counsel for Defendants asked at the hearing for clarification as to who would be included in the group of employees "above the pay grade of nurse and below the pay grade of doctor," Judge Whalen did not provide additional guidance.  (ECF Dkt. #36, p. 26)

hearing that the merits of the case are not germane to his motion to compel (ECF Dkt. #36, p. 20), Plaintiff's own testimony shows that employees comparable to him are limited, since he admitted that he was not terminated due to his age (Ex. 1, Plaintiff's dep., p. 170), and Defendants produced information regarding similarly situated female CRNAs.  Thus, age is not a relevant characteristic, and Plaintiff has been provided with information concerning similarly situated females.  Further, Defendants do not track an individual employee's "disability" so there would be no way to provide such information.

Third, during the hearing on Plaintiff's motion, Plaintiff's counsel could not describe which employees he meant to refer to in the Interrogatories which referenced "medical professionals" who provided "patient care."  (ECF Dkt. #36, p. 6)   Since Plaintiff's counsel cannot articulate what he meant by a medical professional who is a provider of direct patient care (and Judge Whalen provided no clarification in his Order) it is ridiculous for Defendants to be required to determine which employees should be included as part of this group. In short, this is a classic fishing expedition.  **Importantly, Judge Whalen's Order does not use the term "direct patient care" but rather, the term "direct patient contact," a different and much broader definition than Plaintiff used.**  Thus, part of Judge Whalen's Order is improper, vague and overly broad and should be set aside.

Fourth, Fed. R. Civ. P. 26(b)(1) allows the Court to limit discovery "if the burden or expense of the proposed discovery outweighs its likely benefit." The Magistrate Judge's Order is plainly inconsistent with the principles and the spirit of Rule 26(b)(1). The time and the expense it will require of Defendants to review hundreds of files to find information that may not even exist for a case with no merit is unduly burdensome. *See Surles,* 474 F.3d at 304-305.

Here, the number of employee classifications that might have direct patient contact would be voluminous. (Exhibit 5, Declaration of Joseph Clayton, ¶3) These classifications would arguably include employees who might have sporadic contact with patients and not provide patient care. (*Id.*) The number of classifications would substantially exceed the number of employee classifications which involve actually providing patient care, i.e. like CRNAs. (*Id.*) The number of possible employees in such classifications could be in the hundreds. (*Id.*) Gathering the information in the Order will require extensive time and effort by approximately a dozen or more HFHS employees, and will literally require staff members to review numerous hardcopy and electronic files. (*Id.* at ¶4)

Further, it will be extremely difficult to determine which of the employees who are above the pay grade of nurse but below the pay grade of physician, who have direct patient contact at Henry Ford Hospital and the four ambulatory centers where the Plaintiff worked, tested positive for drugs or alcohol. (Exhibit 5,

17

Declaration of Joseph Clayton, ¶5) Defendants do not keep that information in any type of data base. (*Id*.) There is no specific code for being terminated for failing a drug/alcohol test. (*Id*.) There are multiple ways that such a termination could be coded and it would be extremely difficult to identify terminations which resulted from a positive drug/alcohol test. (*Id*.)

Finally, the requested discovery is not proportional to the needs of the case. This is a single Plaintiff case. Plaintiff worked as a CRNA. Personal and confidential information regarding hundreds of employees who are not similarly situated to Plaintiff (even if redacted), which will require employees of Defendants to spend countless hours going through numerous electronic and hard copy files to find irrelevant information, is not contemplated by the federal rules of discovery.

## CONCLUSION

For the foregoing reasons, the Magistrate's Order requiring Defendants to provide responses to Plaintiff's Interrogatory Nos. 12, 13 and 14 should be set aside as contrary to law and clearly erroneous.

Respectfully submitted,

VARNUM LLP

By: /s/ Terrence J. Miglio
Terrence J. Miglio (P30541)
Barbara E. Buchanan (P55084)
Attorneys for Defendants
160 W. Fort Street, 5th floor
Detroit, Michigan 48226
Dated: May 22, 2017                    (313) 481-7300

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

By: <u>*/s/ Terrence J. Miglio*</u>
Terrence J. Miglio